FILED
CLERK

7/15/2016 3:47 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
NANCY FALCON,

              Plaintiff,

       -against-

CITY UNIVERSITY OF NEW YORK and
QUEENS COLLEGE AT THE CITY
UNIVERSITY OF NEW YORK,

              Defendants.
-------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
15-cv-3421 (ADS)(ARL)

**APPEARANCES:**

**Tand & Associates**
*Attorneys for the Plaintiff*
990 Stewart Avenue, Suite 130
Garden City, NY 11530
      By: Jonathan A Tand, Esq., Of Counsel

**New York State Attorney General**
*Attorneys for the Defendants*
200 Old County Road, Suite 240
Mineola, NY 11501
      By: Ralph Pernick, Assistant Attorney General

**SPATT, District Judge**.

      This case arises from allegations by the Plaintiff Nancy Falcon (the "Plaintiff") that her

current employers the Defendants City University of New York ("CUNY") and Queens College

at CUNY ("Queens College" and collectively, the "City Defendants") discriminated against her

on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e et seq. ("Title VII"), and on the basis of her age in violation of the Age Discrimination in

Employment Act of 1967, 29 U.S.C.A. § 621 et seq. ("ADEA"), by failing to promote her from

an Assistant District of Public Safety position to a Director of Security position and later

demoting her to an allegedly subordinate position.  In addition, she asserts that the City

Defendants retaliated against her in violation of Title VII and ADEA for objecting to their

1

alleged discrimination.  Finally, she asserts a claim under 42 U.S.C. § 1983 ("Section 1983")
against the City Defendants for their alleged violation of her rights secured under the Equal
Protection Clause of the Fourteenth Amendment.

Presently before the Court is a partial motion pursuant to Federal Rules of Civil
Procedure ("Rules") 12(b)(1) and 12(b)(6) to dismiss the Plaintiff's claims against the City
Defendants under the ADEA and Section 1983 on sovereign immunity grounds, as well as all
claims against the Defendant Queens College.  Also before the Court is a cross-motion by the
Plaintiff pursuant to Rule 15(a)(2) for leave to amend her complaint a second time to add three
individual Defendants Felix Matos Rodriguez ("Rodriguez"), Pedro Pineiro ("Pineiro"), and
Rufus Massiah ("Massiah").

For the reasons set forth below, the City Defendants' partial motion to dismiss is granted
and the Plaintiff's cross-motion for leave to amend is denied.

# I. BACKGROUND

## A. As to the Allegations

The following facts are drawn from the first amended complaint ("FAC") unless
otherwise stated.

The Plaintiff is a female, approximately sixty-three years old, and a resident of Queens
County.

CUNY is the public university system of New York City.  Queens College is a senior
college within CUNY's network.

In 1984, CUNY hired the Plaintiff as an Assistant Director of Public Safety/Security at
Queens College.  The FAC does not specify the Plaintiff's duties or job responsibilities.

According to the FAC, the Department of Public Safety at Queens College was historically "male dominated." To that end, the FAC alleges "upon information and belief" that CUNY has never employed a female as the Director of Public Safety/Security.

Over the course of her tenure at Queens College, the Plaintiff earned several awards and commendations for her service and was by all accounts, a hard-working, dependable, and loyal employee. At an unspecified point in her tenure, the Plaintiff served as an Acting Director of Public Safety/Security. However, she was never promoted to the Director position.

In that regard, in 2000, 2002, 2004, 2005, and 2007, the Plaintiff applied for the Director of Security position. However, the City Defendants decided not to promote her and instead promoted Pineiro, a male candidate, who allegedly was less qualified and younger than the Plaintiff. At unspecified times, the Plaintiff complained to the City Defendants regarding their failure to promote her in favor of a younger male candidate. Apparently, the City Defendants summarily dismissed the Plaintiff's complaints.

In 2007, the City Defendants changed the Plaintiff's title from Assistant Director of Public Safety/Security to Assistant Director for Investigations. As a result of this change in title, the Plaintiff was allegedly stripped of all supervising authority and lost many of her prior job responsibilities. The complaint does not specify what her prior job responsibilities were, nor which job responsibilities she allegedly lost as a result of her demotion.

The City Defendants hired Rufus Massiah, a male employee, as the Assistant Director/Lieutenant Operations Coordinator. Although he apparently had a different title than the Plaintiff, the FAC alleges that Massiah effectively replaced the Plaintiff in her former role as Assistant Director of Public Safety/Security.

3

The FAC alleges "upon information and belief" that Massiah was younger than the Plaintiff.  In addition, prior to replacing the Plaintiff, Massiah was the Plaintiff's subordinate; had no experience as an Assistant Director; and was allegedly "far less qualified for the position than [the] Plaintiff."

In his new position, Massiah had supervising authority over employees that the Plaintiff had supervised prior to her alleged demotion.  After his promotion, Massiah often questioned the Plaintiff's authority and judgment on security procedures.  The FAC further alleges "upon information and belief" that on one occasion, Massiah called the Plaintiff incompetent in front of the Plaintiff's co-workers and other members of the CUNY community.

On October 31, 2008, the Plaintiff filed a charge of discrimination with the Equal Opportunity Commission ("EEOC") and the New York State Division of Human Rights ("DHR") alleging age discrimination under the ADEA and sex discrimination under Title VII. (See the Defs.' Reply Mem. of Law, Dkt. No. 25–2, Ex. 2; see also FAC, Ex. A.)

Subsequently, the City Defendants allegedly attempted to marginalize the Plaintiff within the Queens College Department of Public Safety by undertaking the following actions:  Massiah required CUNY's security staff to obtain his permission prior to transporting the Plaintiff to the scene of a security incident; the City Defendants routinely asked the Plaintiff to serve off-campus subpoenas, which took time away from the Plaintiff's other job responsibilities; in 2008, Pineiro denied the Plaintiff's request to work on a security detail at a concert performed by the band Good Charlotte on the Queens College campus; and on October 9 and 21, 2014, the City Defendants failed to immediately notify the Plaintiff that a potential predator was present on the Queens College campus.

4

In June 2012, the City Defendants promoted Massiah for a second time from Assistant Director/Lieutenant Operations Coordinator to Deputy Director of Public Safety.  Allegedly, the City Defendants did not post an opening for the position, and therefore, the Plaintiff was not able to apply for the position.

On September 9, 2012, the Plaintiff filed a second charge with the EEOC and DHR to add a claim of retaliation.

With regard to the first EEOC charge, on January 31, 2012, the EEOC made a determination that there was reasonable cause to believe that the City Defendants discriminated against the Plaintiff on the basis of her gender and her age, and as a result, sought to engage the parties in conciliation talks to settle the matter.

On December 4, 2014, the Plaintiff submitted an internal charge of discrimination form to the City Defendants' Office of Affirmative Action alleging that the City Defendants had discriminated against her on the basis of her gender and her age, and had also retaliated against her for filing a charge of discrimination with the EEOC and DHR.

Also in early December 2014, the City Defendants allegedly removed the Plaintiff from her office and transferred the majority of her responsibilities to an unidentified male co-worker. However, the Plaintiff apparently kept her title as Assistant Director for Investigations.

**B. As to the Procedural History**

On March 17, 2015, the U.S. Department of Justice notified the Plaintiff that conciliation efforts had failed and issued to the Plaintiff a right to institute a civil action based on her first charge for gender and age discrimination.

On June 8, 2015, the EEOC issued a second notice of a right to sue based on the Plaintiff's second charge for gender discrimination, age discrimination, and retaliation.

On June 12, 2015, the Plaintiff commenced this action against the City Defendants. She alleged the following claims against the City Defendants: claims under Title VII for hostile work environment, gender discrimination, and retaliation; claims under the ADEA for age discrimination, hostile work environment, and retaliation; and a claim for age and gender discrimination under Section 1983 for the violation of the Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment.  She further demanded "compensatory, emotional, psychological, and punitive damages, lost compensation, front pay, back pay, liquidated damage [sic], injunctive relief, and any other damages permitted by law pursuant to the above reference causes of action."

On November 13, 2015, pursuant to Rule 12(b)(1), the City Defendants filed a partial motion to dismiss the Plaintiff's claims under the ADEA and Section 1983 on sovereign immunity grounds.  (See the Defs.' Mem. of Law, Dkt. No. 12–1, at 1–6.)  In addition, the City Defendants moved under Rule 12(b)(6) to dismiss all of the Plaintiff's claims against Queens College because they contended that Queens College is not a legally cognizable entity distinct from CUNY.  (Id. at 6–7.)  Of importance, the City Defendants did not move to dismiss the Plaintiff's Title VII claims against CUNY.

On December 4, 2015, in response to the City Defendants' motion, the Plaintiff filed the FAC as a matter of course under Rule 15(a)(1)(B).  The allegations in the FAC are identical to the allegations in the original complaint.  The only difference between the two pleadings is that unlike the original complaint, the FAC attaches an additional exhibit — namely, the June 8, 2015 letter from the EEOC to the Plaintiff notifying her of her right to sue based on her second EEOC charge of discrimination and retaliation.

On December 21, 2015, the Plaintiff filed a cross-motion for leave to amend the complaint for a second time under Rule 15(a)(1)(C). The proposed second amended complaint ("SAC") purports to add as named Defendants Rodriguez, Pineiro, and Massiah (collectively, the "Individual Defendants"). (See Proposed SAC, Dkt. No. 20.) Other than adding the names and titles of the Individual Defendants, the proposed SAC is almost identical to the FAC and the original complaint.

On February 16, 2016, the City Defendants filed a memorandum in further support of their motion to dismiss and in opposition to the Plaintiff's motion for leave to file the SAC. The City Defendants argued that the proposed claims against the Individual Defendants were futile. In addition, they argued for the first-time that the Court should dismiss the *entire* action because the Plaintiff failed to state causes of action for discrimination, retaliation, and hostile work environment under the ADEA, Title VII, and Section 1983. (See the Defs.' Opp'n Mem. of Law, Dkt. No. 25, at 9–14; 16–20.)

The Plaintiff did not file a reply memorandum in support of her motion for leave amend the FAC.

## II. DISCUSSION

### A. As to the City Defendants' Partial Motion to Dismiss

As noted, on November 13, 2015, the City Defendants filed a partial motion to dismiss the Plaintiff's claims in the original complaint against Queens College because they contended that Queens College is not a cognizable legal entity. They also asserted that the Plaintiff's ADEA and Section 1983 claims failed on sovereign immunity grounds. (See the Defs.' Mem. of Law, Dkt. No. 12–1, at 1–6.)

Well-worn legal authority supports the City Defendants' contention that sovereign immunity guaranteed by the Eleventh Amendment bars ADEA and Section 1983 claims against CUNY.  See Clissuras v. City Univ. of New York, 359 F.3d 79, 83 (2d Cir. 2004) (Per Curiam) ("Plaintiffs' suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment."); see also Kimel v. Florida Bd. of Regents, 528 U.S. 62, 91, 120 S. Ct. 631, 650, 145 L. Ed. 2d 522 (2000) (holding that Congress did not validly abrogate sovereign immunity for purposes of the ADEA); Dube v. State Univ. of New York, 900 F.2d 587, 594 (2d Cir. 1990) (noting that it is "well-settled" that Congress did not validly abrogate state sovereign immunity under Section 1983).

There is also a wealth of authority supporting the City Defendants' proposition that Queens College, as a senior college within the CUNY network, is not a legal entity distinct from CUNY and is therefore, not a proper Defendant in this Action.  See Clissuras, 359 F.3d at 81 n.2 ("Under New York Law, CUNY is a separate corporate body. See N.Y. Educ. Law § 6203 (McKinney 2001). CUNY is composed of 'each senior college and each community college.' Id. § 6202(2) (McKinney Supp.2004). New York City Technical College does not appear to be a legally cognizable entity apart from CUNY. See id. §§ 6202(2) & 6202(5). Consequently, CUNY is the properly named defendant in this action.").

Perhaps recognizing this, in support of her cross-motion to amend her complaint for a second time, the Plaintiff stated that she "concedes that the Eleventh Amendment bars claims against the state and state entities and that CUNY, and not Queens College, is the proper defendant."  (The Pl.'s Mem. of Law, Dkt. No. 20, at 6.)

Accordingly, the Court grants as unopposed the Defendants' partial motion to dismiss the Plaintiff's claims against Queens College; the Plaintiff's Section 1983 claim; and the Plaintiff's

ADEA claims.  Thus, the only remaining claims in this action are the Plaintiff's Title VII claims against CUNY.

The Court notes that the Plaintiff appears to concede that sovereign immunity under the Eleventh Amendment bars *all* of her claims against the City Defendants.  However, the City Defendants did not move to dismiss *all* of her claims on the basis of sovereign immunity; rather, they only moved to dismiss her Section 1983 and ADEA claims — not her Title VII claims — on the basis of sovereign immunity.

Indeed, the City Defendants could not have moved to dismiss the Plaintiff's Title VII claims on the basis of sovereign immunity because it is well-established that Congress has abrogated sovereign immunity for Title VII claims.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 457, 96 S. Ct. 2666, 2672, 49 L. Ed. 2d 614 (1976); Gengo v. City Univ. of New York, 479 F. App'x 382, 383 n.2 (2d Cir. 2012) (Summary Order) ("Title VII specifically abrogates state sovereign immunity."); Soloviev v. Goldstein, 104 F. Supp. 3d 232, 245-46 (E.D.N.Y. 2015) ("Plaintiffs' Title VII claims against the CUNY Defendants are not barred by the Eleventh Amendment."); Shao v. City Univ. of New York, No. 12-CV-1566 (RJS), 2014 WL 5038389, at *9 (S.D.N.Y. Sept. 30, 2014) ("[T]his sovereign immunity does not extend to Plaintiff's Title VII claims against CUNY."); McCray v. City Univ. of New York, No. 10 CIV. 3152 (PAC)(DF), 2011 WL 1143045, at *3 (S.D.N.Y. Jan. 3, 2011) ("Congress has, however, by its authority under Section Five of the 14th Amendment, abrogated the states' immunity with respect to Title VII claims."), report and recommendation adopted, No. 10 CIV. 3152 (PAC)(DF), 2011 WL 1197467 (S.D.N.Y. Mar. 25, 2011).

In any event, for the reasons discussed above, the Court declines to construe the Plaintiff's statement in her memorandum of law to mean that sovereign immunity bars all of her

claims against CUNY, including her Title VII claims.  Thus, the Plaintiff's Title VII claims against CUNY remain in this action, and all of her other claims against CUNY and Queens College are hereby dismissed.

**B. As to the Plaintiff's Cross-Motion to Amend**

The Plaintiff moves for leave to file a proposed SAC so that she can add the following claims against the Individual Defendants: (i) Title VII claims for gender discrimination, hostile work environment, and retaliation; (ii) ADEA claims for age discrimination, hostile work environment, and retaliation; and (iii) a Section 1983 claim for the violation of the Plaintiff's rights under the Equal Protection Clause.

The City Defendants oppose the Plaintiff's motion because they argue that all of the Plaintiff's proposed claims against the Individual Defendants fail as a matter of law.

As set forth below, the Court agrees.

**1. The Legal Standard**

Where, as here, a plaintiff has already amended her complaint once as a matter of course, any subsequent amendment requires "the opposing party's consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15(a)(2) states that a court "should freely give leave when justice so requires."  "'Reasons for a proper denial of leave to amend include undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party.'" AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010) (parenthetically quoting State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)).  "Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim."  City of New York v. Grp. Health Inc., 649 F.3d 151, 158 (2d Cir. 2011) (parenthetically quoting AEP Energy Servs. Gas Holding Co., 626 F.3d at 726).

10

"The standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC, 783 F.3d 383, 389 (2d Cir. 2015). Here, the City Defendants argue that the Plaintiff's proposed claims against the Individual Defendants would not withstand a Rule 12(b)(1) motion dismiss for lack of subject matter jurisdiction and a Rule 12(b)(6) motion to dismiss for failure to state claim upon which relief can be granted.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving the question of subject matter jurisdiction, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [] may not rely on conclusory or hearsay statements contained in the affidavits." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004) (alteration added) (citing Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000)). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

To survive a 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citation omitted). Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation

11

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Twombly, 550 U.S. at 570 (citation omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citation omitted).  Accordingly, unless plaintiffs' well-pleaded allegations have "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Twombly, 550 U.S. at 569.

In considering a motion to dismiss, a court is generally "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citing Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002)).  "[W]here matter outside the pleadings is offered and not excluded by the trial court, the motion to dismiss should be converted to a motion for summary judgment." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013) (citing Fed. R. Civ. P. 12(d)).

### 2. As to the Proposed Title VII and ADEA Claims

The City Defendants argue that the Plaintiff's proposed Title VII and ADEA claims against the Individual Defendants fail as a matter of law because neither of those statutes provides for individual liability.  (See the Defs.' Opp'n Mem. of Law, Dkt. No. 25, at 4.)

The Plaintiff does not offer a response to this argument, effectively abandoning her proposed claims against the Individual Defendants under Title VII and the ADEA.  See, e.g., M.M. ex rel. J.M. v. New York City Dep't of Educ., No. 09 CIV. 5236 (PAC), 2010 WL 2985477, at *6 (S.D.N.Y. July 27, 2010) ("Plaintiffs' failure to respond to the SED's arguments

constitutes an abandonment of their claims against the SED."); Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) ("Brandon did not raise any arguments opposing Defendants' motion regarding these two claims. Accordingly, the Court deems Brandon's first and third claims abandoned.").

Even if not abandoned, the City Defendants are correct that Title VII does not provide for individual liability of supervisors in their individual capacities. Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010) ("We have, however, determined that the remedial provisions of Title VII, including § 2000e–5, do not provide for individual liability."); Cayemittes v. City of New York Dep't of Hous. Pres. & Dev., No. 13-4071-CV, 2016 WL 860063, at *1 (2d Cir. Mar. 7, 2016) (Summary Order) ("At the outset, we affirm the dismissal of all Title VII claims against defendants sued in their individual capacities because Title VII does not provide for individual liability.").

In addition, while the Second Circuit does not appear to have explicitly decided the issue, many recent decisions in this Circuit have also rejected Title VII claims against individuals in their official capacities because those claims are duplicative of claims against a corporate defendant.  See, e.g., Garcia v. Yonkers Bd. of Educ., No. 15 CIV. 0767 (NSR), 2016 WL 3064116, at *4 (S.D.N.Y. May 27, 2016) ("Plaintiff cannot assert any Title VII retaliation claims against the Individual Defendants, even in their official capacities, and all such claims are dismissed."); Jeune v. City of New York, No. 11 CIV. 7424 (JMF), 2014 WL 83851, at *3 (S.D.N.Y. Jan. 9, 2014) ("The Court also dismisses Plaintiff's Title VII claims against the two individual Defendants in their official capacities, as the claims are duplicative of Plaintiff's claims against the City."); Yu v. N.Y. State Unified Court Sys. Office of Court Admin., No. 11 Civ. 3226 (JMF), 2013 WL 3490780, at *4 (S.D.N.Y. July 12, 2013) ("[A] plaintiff may not

13

bring a Title VII claim against an individual in his or her official capacity if the claim is duplicative of the claim against the public employer."); Emmons v. City Univ. of New York, 715 F. Supp. 2d 394, 410 (E.D.N.Y. 2010) ("Although the Second Circuit has not yet explicitly decided the issue, 'many recent decisions in this Circuit have rejected Title VII official capacity claims.'") (quotin, 704 F. Supp. 2d 202, 235 (E.D.N.Y. 2010)).

For similar reasons, courts have often dismissed ADEA claims against individual defendants in both their individual and official capacities where, as here, the complaint also names the corporate defendant.  See, e.g., Boyd v. Broome Cmty. Coll., No. 3:14-CV-0397 (GTS) (DEP), 2015 WL 6962498, at *6 (N.D.N.Y. Nov. 10, 2015) (dismissing Title VII and ADEA claims against individuals in their individual and official capacities because "while certain district court cases from within the Second Circuit have held that a supervisory employee may be named in his official capacity as an agent of an employer in certain circumstances, more recent and more numerous district court decisions from within the Circuit have rejected such official capacity claims."); Doner-Hendrick v. New York Inst. of Tech., No. 11 CIV. 121 (SAS), 2011 WL 2652460, at *8 (S.D.N.Y. July 6, 2011) ("Neither Title VII nor the ADEA permit individual liability, and where a plaintiff has named a corporate defendant, it is redundant to also name individual agents of that corporate defendant, even in their 'official capacity.'"); Saunders v. NYC Dep't of Educ., No. 07CV2725 (SJF)(LB), 2010 WL 331679, at *8 (E.D.N.Y. Jan. 19, 2010) ("Plaintiff's Title VII and ADEA claims (second and first claims for relief, respectively) against the individual DOE defendants and the UFT defendants are *sua sponte* dismissed as frivolous, since, inter alia, individuals are not subject to liability under those statutes and any 'official capacity' claim would be redundant to plaintiff's claims against the DOE.").

Here, the Plaintiff seeks to assert ADEA and Title VII claims against the Individual Defendants in their individual and official capacities.  As the cases above establish, the ADEA and Title VII do not provide for personal liability of individual defendants.  Therefore, the ADEA and Title VII claims against the Individual Defendants in their individual capacities clearly fail as a matter of law.  In addition, CUNY is a named Defendant in this action.  Under these circumstances, most courts would also dismiss Title VII and ADEA claims against the Individual Defendants in their official capacities because those claims are duplicative of the Plaintiff's claims against CUNY.

For these reasons, the Court finds that the Plaintiff's proposed ADEA and Title VII claims against the Individual Defendants are futile because the Plaintiff has failed to oppose the the City Defendants' argument and the claims also fail as a matter of law.

**3. As to the Proposed Section 1983 Claim**

The Plaintiff also seeks to add a Section 1983 claim against the Individual Defendants in their official and individual capacities for the violation of her Equal Protection rights based on their alleged discriminatory actions.

The Defendants argue that the proposed Section 1983 claim is futile because, among other things, (i) the claims is barred by sovereign immunity and therefore, fails to invoke the Court's subject matter jurisdiction; and (ii) the allegations in the proposed SAC against the Individual Defendants fail to state a plausible Section 1983 claim.

As described *infra*, for purposes of sovereign immunity, there is a significant legal difference between a Section 1983 claim against an individual in his or her official capacity versus a claim against an individual in his or her individual or personal capacity.  Accordingly,

15

the Court analyzes, in turn, the Plaintiff's proposed Section 1983 claim against the Individual Defendants in their official and individual capacities.

### a. As to the Section 1983 Claim Against the Individual Defendants in their Official Capacities

"The Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it."  Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis., 804 F.3d 178, 193 (2d Cir. 2015) (citing Fulton v. Goord, 591 F.3d 37, 45 (2d Cir. 2009)).  As discussed earlier, Congress has not waived sovereign immunity for Section 1983 claims, and CUNY is considered an "arm of the state" to which the Eleventh Amendment applies.  See Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004) ("[W]e find that his Section 1983 claim is clearly barred by the Eleventh Amendment because the DMV is a state agency."); Clissuras, 359 F.3d at 83 ("Plaintiffs' suits against CUNY are equivalent to suits against the State of New York and are therefore barred by the Eleventh Amendment.").  Thus, the Plaintiff's proposed Section 1983 damages claim against the Individual Defendants in their official capacities is barred by the doctrine of sovereign immunity.

However, "[u]nder the well-known exception to this rule first set forth in Ex parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), . . . 'a plaintiff may sue a state official acting in his official capacity — notwithstanding the Eleventh Amendment — for prospective, injunctive relief from violations of federal law.'"  State Employees Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 95 (2d Cir. 2007) (alteration added) (quoting In re Deposit Ins. Agency, 482 F.3d 612, 617 (2d Cir. 2007)).  "In determining whether the doctrine of Ex parte Young avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly

characterized as prospective.'" <u>Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland</u>, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002) (quoting <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L.Ed.2d 438 (1997)).

Here, the Plaintiff contends that her proposed Section 1983 claim against the Individual Defendants alleges an "ongoing violation of the law" because she is still employed by CUNY, and the Individual Defendants are allegedly continuing to discriminate and retaliate against her by failing to promote her within the Public Safety Department.  (<u>See</u> the Pl.'s Mem. of Law, Dkt. No. 20, at 10–11.)  She also asserts that her proposed claim can be categorized as prospective injunctive relief because she requests injunctive relief in the SAC, which may include reinstatement to her former position as Assistant Director of Public Safety/Security.  (<u>See</u> <u>id.</u> at 7.)  Thus, in this narrow fashion, the Plaintiff claims that her Section 1983 claim against the Individual Defendants for injunctive relief falls within the <u>Ex parte Young</u> exception.  (<u>See</u> <u>id.</u>)

In opposition, the City Defendants assert that the <u>Ex parte Young</u> exception is inapplicable because the Plaintiff's Section 1983 claim is not based on an ongoing violation of federal law, but rather, based on discrete allegedly discriminatory acts that occurred in the past. (<u>See</u> the Defs.' Mem. of Law, Dkt. No. 25, at 21–22.)  They also assert that the Plaintiff's Section 1983 claim fails to allege that the Individual Defendants have authority to grant her reinstatement to her former position and therefore, her claim for "injunctive relief" is too vague to be categorized as "prospective" within the meaning of <u>Ex parte Young</u>.  (<u>Id.</u> at 24–25.)  The Court agrees.

The Second Circuit has held that employment claims seeking equitable reinstatement are properly categorized as "prospective" and therefore, fall within the <u>Ex parte Young</u> exception. <u>See</u> <u>State Employees Bargaining Agent Coal. v. Rowland</u>, 494 F.3d 71, 96 (2d Cir. 2007)

("Every Circuit to have considered the issue, including our own, has held that claims for reinstatement to previous employment satisfy the Ex parte Young exception to the Eleventh Amendment's sovereign immunity bar."); Dotson v. Griesa, 398 F.3d 156, 179 (2d Cir. 2005) ("[W]e conclude that Dotson's claim for equitable reinstatement is not barred by sovereign immunity.").

However, courts have held that conclusory requests for "injunctive relief" are not sufficient to state a reinstatement claim under Ex parte Young. For example, in Emmons v. City Univ. of New York, 715 F. Supp. 2d 394 (E.D.N.Y. 2010), the plaintiffs brought separate discrimination claims against individual CUNY officials for injunctive relief. Id. at 407. In opposition to a motion to dismiss those claims as barred by the Eleventh Amendment, the plaintiffs argued that their claims fell within the Ex parte Young exception for prospective injunctive relief. Id. at 407. The court found that "[o]n the face of the complaint, the Young exception is not supportable" because the complaint was, according to the court, "far less clear in its request for equitable relief, and 'reinstatement' is never mentioned." Id. Accordingly, the court granted the individual defendants' motion to dismiss the discrimination claims for injunctive relief against the CUNY officials based on the doctrine of sovereign immunity. Id.; see also Pierre v. New York State Dep't of Corr. Servs., No. 05 CIV. 0275 (RJS), 2009 WL 1583475, at *18 (S.D.N.Y. June 1, 2009) (finding that an "isolated incident of alleged disability discrimination, in conjunction with conclusory language requesting unspecified injunctive relief, is insufficient for purposes of Ex parte Young," and dismissing a plaintiff's discrimination claims against state officials as barred under the Eleventh Amendment).

In addition, district courts in this Circuit have repeatedly held that the Ex parte Young exception to sovereign immunity does not authorize claims against officials for reinstatement

where there are no allegations that the officials had authority to grant the plaintiffs with reinstatement to their former positions.  See Soloviev v. Goldstein, 104 F. Supp. 3d 232, 245 (E.D.N.Y. 2015) (dismissing reinstatement claims against state college officials because the plaintiff failed to allege that the individuals were in a position to grant the plaintiffs reinstatement); Siani v. State Univ. of New York at Farmingdale, 7 F. Supp. 3d 304, 317 (E.D.N.Y. 2014) (dismissing reinstatement claims against state officials who did not have authority to provide the injunctive relief sought by the plaintiff); Schallop v. New York State Dep't of Law, 20 F. Supp. 2d 384, 391 (N.D.N.Y. 1998) ("There is no evidence that either Berens or Alden possessed the authority to reinstate Schallop even were she to prevail at trial. Therefore, the reinstatement claims must be dismissed as to those defendants.").

Here, the Plaintiff's Section 1983 claim appears primarily related to the past acts of discrimination allegedly committed by the Individual Defendants, such as their decision to promote a male employee over the Plaintiff to the position of Director of Public Safety, and their decision to allegedly demote the Plaintiff from her position as Assistant Director of Public Safety/Security and later remove her from her office.  These discrete acts of discrimination are not the kind of ongoing violations of federal law that the Ex parte Young was intended to remedy.  See CSX Transp., Inc. v. New York State Office of Real Prop. Servs., 306 F.3d 87, 98 (2d Cir. 2002)  ("[T]he Supreme Court has instructed that the purpose of Ex Parte Young is to 'ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law.'") (quoting Idaho v. Coeur d'Alene Tribe, 521 U.S. 261, 269, 117 S. Ct. 2028, 138 L.Ed.2d 438 (1997)).

In her brief, the Plaintiff seeks to cast her vague request for "injunctive" relief as a claim for reinstatement.  However, there are no allegations in the proposed SAC which support her

contention.  Indeed, the proposed SAC does not assert an explicit claim for reinstatement or any other kind of prospective injunctive remedies.  The only reference to any kind of injunctive relief is a single mention of the phrase alongside every other form of damages remotely available to the Plaintiff, including, "compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, liquidate damage [sic]."  Again, this is not the kind of prospective injunctive relief authorized by Ex parte Young.  See Emmons, 715 F. Supp. 2d at 407 (" In her opposition, plaintiff attempts to shunt her claims into the ambit of Young by arguing that she seeks prospective injunctive relief against Jackson and Guada, "including but not limited to reinstatement." . . . . However, as noted above, the complaint itself is far less clear in its request for equitable relief, and 'reinstatement' is never mentioned. On the face of the complaint, the Young exception is not supportable, and, therefore, all claims purportedly brought pursuant to that doctrine are dismissed.").

Finally, the proposed SAC contains no allegations suggesting that the Individual Defendants have authority to reinstate the Plaintiff in her former role as Assistant Director of Public Safety/Security.  There is no suggestion that the Individual Defendants were involved in the hiring process or the personnel decisions that are the primary bases for her Section 1983 claim.

Thus, based on these allegations alone, the Court finds that it is not plausible to conclude that the Plaintiff is in fact seeking prospective injunctive relief, as opposed to compensation for the Defendants' allegedly discriminatory past acts.  See Perciballi v. New York, No. 09CIV6933, 2010 WL 3958731, at *4 (S.D.N.Y. Sept. 28, 2010) ("However, Perciballi fails to allege that any Individual Defendant has the authority to reinstate him. Accordingly, Perciballi's claim for injunctive relief against the Individual Defendants cannot proceed.").

Accordingly, the Court finds that the doctrine of <u>Ex parte Young</u> does not authorize her proposed Section 1983 claim against the Individual Defendant in their official capacities and therefore, leave to amend the FAC to add that claim is denied as futile.

**b. As to the Section 1983 Claim Against the Individual Defendants in their Individual Capacities**

Unlike Section 1983 claims against individuals in their official capacities, the Supreme Court has held that "[t]he Eleventh Amendment does not bar § 1983 personal-capacity suits against state officials in federal court." <u>Hafer v. Melo</u>, 502 U.S. 21, 22, 112 S. Ct. 358, 360, 116 L. Ed. 2d 301 (1991). The reason for this distinction is that when state officials are sued in their official capacities they are not considered "persons" within the meaning of Section 1983 because "they assume the identity of the government that employs them." <u>Id.</u> at 27, 112 S. Ct. at 362 (citation omitted). "By contrast, officers sued in their personal capacity come to court as individuals" and "thus fit[] comfortably within the statutory term 'person.'" <u>Id.</u>; <u>see also</u> <u>See Tanvir v. Lynch</u>, 128 F. Supp. 3d 756, 766 (S.D.N.Y. 2015) (recognizing that 42 U.S.C. § 1983 is one "mechanism[] that may provide for personal capacity damages actions in the constitutional context against federal and state officers[.]").

Accordingly, although, as described above, the Court finds that it lacks subject matter jurisdiction over the Plaintiff's proposed Section 1983 claim against the Individual Defendants in their *official capacities* on sovereign immunity grounds, it finds that sovereign immunity does not bar the Plaintiff's proposed Section 1983 claim against the Individual Defendants in their *personal capacities*.

Nevertheless, the City Defendants argue that the Plaintiff's proposed Section 1983 claim is futile for other reasons, including that the claim is time-barred; the claim fails to allege a plausible claim for relief under Section 1983 because there are no allegations of personal

involvement on the part of the Individual Defendants in CUNY's alleged discriminatory actions; and the portion of the Section 1983 claim arising from age discrimination is pre-empted by the AEDA.  (See the Defs.' Opp'n Mem. of Law, Dkt. No. 25, at 1–8, 12–16.)

The Court notes that the Plaintiff failed to file a reply brief or any memoranda responding to these arguments.  As discussed earlier, for this reason alone, the Plaintiff's Section 1983 claim against the Individual Defendants in their personal capacities is subject to dismissal.  See Rivera v. Balter Sales Co. Inc., No. 14-CV-1205 (LTS), 2014 WL 6784384, at *3 (S.D.N.Y. Dec. 1, 2014) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims."); McLeod v. Verizon New York, Inc., 995 F. Supp. 2d 134, 143 (E.D.N.Y. 2014) (Spatt, J) ("[C]ourts in this circuit have held that '[a] plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitute an abandonment of those claims.'") (quoting Youmans v. Schriro, No. 12 Civ. 3690 (PAE) (JCF), 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013)).

Further, even under an independent review, the Court finds the proposed SAC fails to state a plausible Section 1983 claim against the Individual Defendants.  Therefore, the Court does not reach the Defendants' remaining arguments regarding timeliness and pre-emption.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the

plaintiff to be deprived of a federal right." <u>Back v. Hastings On Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 122 (2d Cir. 2004).  "Additionally, '[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Id.</u> (alteration in original) (quoting <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977)).

"Personal involvement" for purposes of Section 1983 may be shown, among other ways, by evidence that the "the defendant participated directly in the alleged constitutional violation"; "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong"; "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; or "the defendant was grossly negligent in supervising subordinates who committed the wrongful acts." <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 139 (2d Cir. 2013) (quoting <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995) (internal quotation marks omitted)).  For example, "[w]hen an allegedly discriminatory action is taken by an entity, such as the Board of Education, a participant in the decision making process may be held liable for that action if the plaintiff can demonstrate that the individual defendant acted with a[n] improper motive and played a 'meaningful role' in the decision making process[.]"  <u>Span v. Enlarged City Sch. Dist. of Troy</u>, No. 12-CV-0975, 2012 WL 3886177, at *2 (N.D.N.Y. Sept. 6, 2012) (collective cases).

In the present case, the Plaintiff's Section 1983 claim is premised on the following allegations.  First, in in 2000, 2002, 2004, 2005, and 2007, the Plaintiff was passed over for a promotion in favor of the Individual Defendant Pineiro, a male who is allegedly younger than the Plaintiff.  Second, in 2007, CUNY allegedly demoted the Plaintiff and replaced her with Rufus Massiah, a male employee.  Third, in retaliation for the Plaintiff filing a charge of discrimination

in 2008 and subsequent charges in 2012 and in 2014, the Defendants allegedly attempted to marginalize the Plaintiff within the Queens College Department of Public Safety.  Finally, in 2014, the Defendants removed the Plaintiff from her office and shifted her responsibilities to an unidentified male colleague.

Even assuming *arguendo* that these allegations did constitute discriminatory acts in violation of the Plaintiff's rights under the Equal Protection clause, there are no allegations which plausibly link the Individual Defendants to these acts.  Instead, the Plaintiff primarily resorts to group pleading against all of the Defendants, including CUNY and the Individual Defendants, when alleging the above-allegations, a tactic which is expressly disfavored with regard to Section 1983 claims.  See Spring v. Allegany-Limestone Cent. Sch. Dist., 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015) ("Because the personal involvement of a defendant is a prerequisite to an award of damages under § 1983, a plaintiff cannot rely on a group pleading against all defendants without making specific individual factual allegations."); Thomas v. Venditto, 925 F. Supp. 2d 352, 363 (E.D.N.Y. 2013) (dismissing Section 1983 claims against individual defendants because "[i]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]") (alteration added) (quoting Bertuglia v. City of N.Y., 839 F. Supp. 2d 703, 723 n. 4 (S.D.N.Y. 2012)).

As stated earlier, there are no allegations in the proposed SAC that any of the Individual Defendants took part in the decision not to promote the Plaintiff and to subsequently demote her, or that they had authority over personnel decisions in CUNY's Public Safety department.  Nor are there any allegations suggesting that the Plaintiff complained to the particular Individual Defendants about their failure to promote her.  Finally, there are no allegations suggesting that the Individual Defendants were even aware that she filed EEOC charges against CUNY.

24

Indeed, the only allegation against the Defendant Rodriguez is that he is President of CUNY.  That allegation alone is clearly not sufficient to state a Section 1983 claim.  See Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 127 (2d Cir. 2004) ("An individual cannot be held liable for damages under § 1983 'merely because he held a high position of authority[.]'") (quoting Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996)); Volpe v. Nassau Cty., 915 F. Supp. 2d 284, 299 (E.D.N.Y. 2013) ("It is well-settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.") (quoting Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999)).

Similarly, the only allegations against Massiah are that he was the Plaintiff's supervisor; on one occasion at an unspecified time he called the Plaintiff incompetent; and on another occasion at an unspecified time he required other CUNY employees to obtain his permission before transporting the Plaintiff to the scene of a security incident.  The only allegation against Pineiro other than his job title is that in 2008, he declined the Plaintiff's request to work on a security detail at a concert because he had already asked Massiah to work at the event.

Even if true, the Court finds that these facially neutral actions which are not connected in any way to the allegations of discrimination and retaliation by CUNY do not plausibly give rise to an inference that Massiah or Pineiro participated in CUNY's alleged violations of the Plaintiff's Equal Protection rights.  See Lesane v. City of New York, No. 11 CIV. 2104 (HB), 2011 WL 5242721, at *3 (S.D.N.Y. Nov. 3, 2011) (granting motion to dismiss a plaintiff's Section 1983 claims because "Plaintiff fails to allege any facts to indicate that Commissioner Schriro, Warden Czermiawski, Deputy Hall, Deputy Miller, and Deputy Moore had any personal involvement in, knowledge of, or responsibility for any constitutional deprivation relating to his

25

claims"); <u>Gordon v. City of New York</u>, No. 09CV3908 (CBA)(LB), 2009 WL 3878241, at *3

(E.D.N.Y. Nov. 18, 2009) ("Here, plaintiff fails to allege facts demonstrating that defendant

Horn or Hourihane had any direct involvement with, knowledge of, or responsibility for the

alleged deprivation of plaintiff s civil rights. Since the claim against these defendants, as

presently stated, can be supported only on the basis of the respondeat superior or vicarious

liability doctrines, which are not applicable to § 1983 actions, the claim must be dismissed

against defendants Horn and Hourihane.").

For these reasons, the Court finds that the proposed SAC fails to allege the requisite

personal involvement of the Individual Defendants in the alleged acts of discrimination and

retaliation against the Plaintiff and therefore, fails to state a plausible Section 1983 claim against

them.

In sum, the Court finds that the SAC fails to allege a plausible claim under Title VII, the

ADEA, or Section 1983 against the Individual Defendants.  Accordingly, the Court denies the

Plaintiff's motion for leave to amend her complaint for a second time to add these claims against

the Individual Defendants.

**C. As to the Additional Grounds for Dismissal Asserted in the City Defendants' Reply
Papers**

As discussed earlier, in its original partial motion to dismiss, the City Defendants moved

to dismiss the Plaintiff's claims against the City Defendant under the ADEA and Section 1983

on sovereign immunity grounds; and they moved to dismiss the claims against Queens College

as duplicative of the claims against CUNY.  (<u>See</u> the Defs.' Mem. of Law, Dkt. No. 12–1.)

However, and importantly, the City Defendants did not move to dismiss the Plaintiff's claims

against CUNY under Title VII for gender discrimination, hostile work environment, and

retaliation.

In their opposition to the Plaintiff's motion to amend her complaint to add claims against the Individual Defendants, the City Defendants seek for the first time to dismiss *all* of the Plaintiff's claims, including her Title VII claims for gender discrimination, hostile work environment, and retaliation.  (See the Defs,' Opp'n Mem. of Law, Dkt. No. 25, at 9–12; 16–19.)

This is improper.  Under Rule 12(h)(2), if a party fails to raise the defense of failure to state a claim upon which relief can be granted in his or her pre-answer motion to dismiss, then the party may raise the defense again in "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."  The Rule does not list opposition to a Rule 15 motion to amend as a proper procedural vehicle to raise a Rule 12(b)(6) argument that could have been raised but was not in a party's original motion to dismiss. See Simmons v. Justice, 196 F.R.D. 296, 297-98 (W.D.N.C. 2000) ("The defense of failure to state a claim under Rule 12(b)(6) . . . may be limited in the form of its presentation where it is not initially raised. Where a party fails to raise a Rule 12(b)(6) defense in its answer, . . . Rule 12(h)(2) provides that such defense may be raised either under Rule 12(c) as a motion for judgment on the pleadings or at trial under Rule 50.").

Further, courts have held that the filing of an amended complaint "does not automatically revive the defenses and objections a defendant waived in its first motion to dismiss, nor does it allow a defendant to advance arguments that could have been made in the first motion to dismiss." Jones v. U.S. Bank Nat. Ass'n, No. 10 C 0008, 2012 WL 899247, at *8 (N.D. Ill. Mar. 15, 2012); see also Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc., 217 F.R.D. 305, 307 (N.D.N.Y. 2003) ("Nevertheless, the amended complaint does not automatically revive all the defenses and objections the defendant may have waived in a first motion to dismiss or to challenge the sufficiency of the amended complaint with arguments that were previously

considered and decided by the court in the first motion to dismiss. Nor may defendant advance arguments that could have been made in the first motion to dismiss but neglected to do so.").

For this reason, courts have refused to consider arguments that could have been made in an original motion to dismiss that were re-asserted in a motion to dismiss an amended complaint or in opposition to the filing of an amended complaint.  See Naples v. Stefanelli, No. 12-CV-4460 (JS) (ARL), 2015 WL 541489, at *5 (E.D.N.Y. Feb. 7, 2015) ("The false arrest allegations in the Second Amended Complaint are identical to false arrest allegations in the Amended Complaint. The ESI Defendants therefore could have argued that probable cause existed in their first motion to dismiss, but they did not. Accordingly, the ESI Defendants have waived the ability to assert this defense in a second motion to dismiss. Their motion to dismiss the false arrest claims is therefore DENIED."); Jones v. U.S. Bank Nat. Ass;n, No. 10 C 0008, 2012 WL 899247, at *8 (N.D. Ill. Mar. 15, 2012) (finding that it was improper for the defendants to raise an argument that a claim was not sufficient in a second motion to dismiss because it could have been made in the first motion to dismiss); Limbright v. Hofmeister, No. CIVA5:09-CV-107 (KSF), 2010 WL 1740905, at *3 (E.D. Ky. Apr. 27, 2010) ("Any defense regarding the scope of damages to which the Plaintiffs may be entitled was unquestionably available at the time of the original motion while the children were still parties, but it was not included in that motion. Accordingly, it 'may not be the basis of a second pre-answer motion.").

In the present case, the proposed SAC contains nearly identical allegations to the original complaint with the exception of a few allegations regarding the titles of the Individual Defendants.  Thus, the City Defendants could have argued in their first motion to dismiss that the Plaintiff's Title VII claims against CUNY failed to state a plausible claim for relief.  However, they did not make that argument and instead sought to assert it for the first time in their reply

brief in support of their motion to dismiss and in opposition to the Plaintiff's motion to amend the original complaint.  The text of Rule 12(g)(2) and the cases cited above establish that their attempt to raise an argument in this procedural posture was improper.  Therefore, the Court declines to consider the Defendants' new arguments regarding the sufficiency of the Title VII claims against CUNY.  To the extent the City Defendants would like to make such arguments, Rule 12(g)(2) makes clear that they may do so in their answer, a Rule 12(c) motion for a judgment on the pleadings, or at trial.

### III. CONCLUSION

For the foregoing reasons, the City Defendants' partial motion to dismiss is granted as unopposed; Queens College is hereby dismissed from this action; the Plaintiff's ADEA and Section 1983 claims are dismissed in their entirety; and the Plaintiff's cross motion for leave to file a second amended complaint is denied.

For the purpose of clarity, the Court notes that the only remaining viable claims in this action are the Plaintiff's Title VII claims against CUNY for gender discrimination, hostile work environment, and retaliation.

**SO ORDERED.**
Dated: Central Islip, New York
July 15, 2016


   _/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge