UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
NANCY FALCON,

                 Plaintiff,

-against-

CITY UNIVERSITY OF NEW YORK,

                 Defendant.
----------------------------------------------------------------x

**MEMORANDUM OF DECISION AND ORDER**
15-cv-3421 (ADS)(ARL)

**APPEARANCES:**

**Jonathan A. Tand & Associates**
*Co-counsel for the Plaintiff*
990 Stewart Avenue, Suite 225
Garden City, NY 11530
    By:    Jonathan A Tand, Esq.,
            Jennifer Spirn, Esq., Of Counsel

**Derek Smith Law Group, PLLC**
*Co-counsel for the Plaintiff*
30 Broad Street
35th Floor
New York, NY 10004
    By:    John C Luke, Jr., Esq., Of Counsel

**New York State Attorney General**
*Attorneys for the Defendant*
200 Old County Road, Suite 240
Mineola, NY 11501
    By:    Ralph Pernick, Assistant Attorney General

**SPATT, District Judge**:

       This case arises from allegations by the Plaintiff Nancy Falcon (the "Plaintiff") that her current employer the Defendant City University of New York ("CUNY") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") by engaging in gender discrimination, creating a hostile work environment, and retaliating against her for objecting to the alleged discrimination.

Presently before the Court is a motion by CUNY for a judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c), dismissing the Plaintiff's complaint. For the following reasons, CUNY's motion is granted in part, and denied in part.

## I. BACKGROUND

### A. The Relevant Facts

The relevant facts have already been recited and summarized by this Court in a previous memorandum of decision and order. (*See* ECF No. 29); *Falcon v. City Univ. of N.Y.*, No. 15CV3421ADSARL, 2016 WL 3920223, 2016 U.S. Dist. LEXIS 92396 (E.D.N.Y. July 15, 2016). Therefore, the Court need not repeat them here.

### B. The Relevant Procedural History

On March 17, 2015, the U.S. Department of Justice notified the Plaintiff that conciliation efforts had failed and issued to the Plaintiff a right to institute a civil action based on her first charge for gender and age discrimination.

On June 8, 2015, the EEOC issued a second notice of a right to sue based on the Plaintiff's second charge for gender discrimination, age discrimination, and retaliation.

On June 12, 2015, the Plaintiff commenced the instant action against CUNY and former defendant Queens College at the City University of New York ("Queens College"). The Plaintiff's original complaint included causes of action brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. § 621 et seq. ("ADEA") and 42 U.S.C. § 1983 ("Section 1983"), as well as under Title VII. The Plaintiff attached two exhibits to her complaint: the EEOC's January 31, 2012 determination, and her right to sue letter issued on March 17, 2015 by the United States Department of Justice.

On November 13, 2015, CUNY and Queens College filed a motion to dismiss all claims except the Plaintiff's Title VII claims against CUNY pursuant to Rules 12(b)(1) and 12(b)(6).

On December 4, 2015, the Plaintiff filed an amended complaint (the "FAC") as a matter of right. The Plaintiff did not allege any new facts, or bring any new causes of action. The amended complaint included an additional exhibit—namely, the June 8, 2015 letter from the EEOC to the Plaintiff notifying her of her right to sue based on her second EEOC charge of discrimination and retaliation.

On December 21, 2015, the Plaintiff filed a motion to amend her complaint a second time pursuant to Rule 15 to add additional defendants.

On July 15, 2016, the Court issued a memorandum of decision and order granting CUNY and Queens College's partial motion to dismiss in its entirety, and denying the Plaintiff's cross-motion for leave to amend.

On September 9, 2016, CUNY filed the instant motion for a judgment on the pleadings pursuant to Rule 12(c). CUNY attached several documents to its motion, all of which fall into one of four categories: documents from the Plaintiff's 2008 EEOC complaint; documents from the Plaintiff's 2012 EEOC complaint; a CUNY charge of discrimination form completed by the Plaintiff; and the Plaintiff's letter, with exhibits, to the EEOC on December 1, 2014.

As of April 19, 2017, the Plaintiff had not filed a memorandum in opposition to CUNY's motion for a judgment on the pleadings, so the Court ordered the Plaintiff to show cause why the motion should not be granted as unopposed. The Plaintiff responded on April 28, 2017. On May 4, 2017, despite the fact that the Plaintiff had not shown good cause as to why she had not responded, the Court extended the Plaintiff's time to respond to CUNY's motion. In doing so, the Court noted that there was a strong preference for deciding cases on their merits; and even if the

3

Court were to analyze the Defendant's motion as unopposed, it would still have to accept the factual assertions in the Plaintiff's complaint as true and construe all possible inferences in her favor.

The motion was fully briefed on June 14, 2017.

## II. DISCUSSION

### A. The Relevant Legal Standard

The standard for a motion for a judgment on the pleadings pursuant to Rule 12(c) is the same as a motion to dismiss a complaint pursuant to Rule 12(b)(6). *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free School Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the now well-established *Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

## B. As to CUNY's Exhibits

The Court first notes that it will take judicial notice of CUNY's exhibits without converting the motion into one for summary judgment. The Plaintiff prepared most of the documents; she had notice of them; and the EEOC files are part of the administrative proceedings of which the Court can take notice.

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Therefore, when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which she relies and which is integral to the complaint, the court may nevertheless take that document into consideration in deciding a defendant's motion to dismiss, without converting the motion into one for summary judgment. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).

However, when a party submits additional evidence to the Court in connection with a motion to dismiss, beyond the scope of those allowed under *Brass* and *Cortec*, "a district court must either 'exclude the additional material and decide the motion on the complaint alone' or

'convert the motion to one for summary judgment under Fed. R .Civ. P. 56 and afford all parties the opportunity to present supporting material.'" *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v. Bd. of Mgrs. of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also* Fed. R. Civ. P. 12(b); 5C Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1366.

Here, the complaint references the Plaintiff's EEOC filings, and she even included the EEOC's findings, and her right to sue letters. Although she did not include all of the EEOC paperwork supplied by CUNY, she has notice of those documents because she submitted them and received them, and she based the instant action on those proceedings.

Furthermore, the Court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Evans v. N.Y. Botanical Garden,* No. 02 Civ. 3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept.4, 2002) (citations omitted); *see also Daniel v. Long Island Hous. P'ship, Inc.*, No. 08-CV-01455 JFB/WDW, 2009 WL 702209, at *5 n.4 (E.D.N.Y. Mar. 13, 2009) ("The Court may consider the EEOC charges because they are public documents filed in state administrative proceedings, as well as because they are integral to her Title VII claim.") (citations omitted); *Lindner v. Int'l Bus. Mach. Corp.*, No. 06 Civ. 4751(RJS), 2008 WL 2461934, at *1 n. 1 (S.D.N.Y. June 18, 2008) (taking judicial notice of an EEOC filing); *Muhammad v. New York City Transit Auth.,* 450 F. Supp. 2d 198, 204–05 (S.D.N.Y. 2006) (taking judicial notice of an EEOC charge and agency determination); *Dutton v. Swissport USA, Inc.,* No. 04 CV 3417, 2005 WL 1593969, at *1 (E.D.N.Y. July 1, 2005) (taking judicial notice of transcript from Worker's Compensation Board hearing and plaintiff's NYSDHR complaint); *Brodeur v. City of N.Y.,* No. 04 Civ. 1859(JG), 2005 U.S. Dist. LEXIS 10865, at *9, 2005 WL 1139908 (E.D.N.Y. May 13, 2005) (stating that

the court could consider "public documents of which the plaintiff has notice" on a Rule 12(b)(6) motion to dismiss); *Thomas v. Westchester Cty. Health Care Corp.,* 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002) (taking judicial notice of the transcript from a disciplinary hearing brought pursuant to section 75 of the New York State Civil Service Law and a report of the Impartial Hearing Officer that resulted from the hearing).

Therefore, the Court will consider CUNY's exhibits without converting the motion into one for summary judgment.

## C. As to the Plaintiff's Title VII Discrimination Claim

CUNY argues that any factual allegations in the FAC that occurred before 2008 are time-barred; that the Plaintiff's allegations related to Massiah's June 2012 promotion are insufficiently alleged; and that the Plaintiff's 2014 internal complaint does not add anything of substance. The Plaintiff argues that her claims are subject to the continuing violation doctrine. The Court agrees with CUNY that any factual allegations that pre-date 2008 are time barred because the continuing violation doctrine is explicitly inapplicable to Title VII discrimination claims. However, the Court finds that the Plaintiff's claims related to Massiah's June 2012 promotion survive scrutiny.

### 1. The Relevant Law

To evaluate claims of discrimination and retaliation under Title VII, courts must apply the burden shifting framework, laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The framework has four steps. The Plaintiff has the initial burden of proving a *prima facie* case of discrimination. *Id.* at 802. If the Plaintiff establishes a *prima facie* case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for its adverse employment decision. *Id.* If the Defendant succeeds in meeting its burden, the presumption of animus "drops out of the picture." *St. Mary's Honor Ctr.*

7

*v. Hicks,* 509 U.S. 502, 510–11, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The Plaintiff must then show that the Defendant's actions were the result of impermissible discrimination. *Holcomb v. Iona College,* 521 F.3d 130,138 (2d Cir. 2008).

To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that "(1)[the] plaintiff is a member of a protected class; (2) [the] plaintiff was qualified for [] [] her position; (3) plaintiff was subjected to an adverse employment action; and (4) the adverse employment action took place under circumstances giving a rise to an inference of discrimination based on plaintiff's membership in the protected class." *El–Din v. N.Y.C. Admin. for Childs.' Servs.,* No. 12 Civ. 1133(PAE), 2012 WL 3839344, at *4 (S.D.N.Y. Sept. 5, 2012) (citing *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 107 (2d Cir. 2010)).

As to the final element,

> [a]n inference of discrimination can arise from circumstances including, but not limited to, "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."

*Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). If the Plaintiff seeks to compare herself to other comparable employees, they "must be similarly situated in all material respects—not in all respects." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)) (internal quotation marks and emphasis omitted).

However, at the pleadings stage, a plaintiff does not need to prove discrimination, or even allege facts establishing every element of a *prima facie* case, but the facts alleged must give "plausible support to the reduced requirements" of the *prima facie* case. *Littlejohn*, 795 F.3d at

311; *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x. 763, 765–67 (2d Cir. 2015) (summary order); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006). Specifically,

> absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent. The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation. The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.

*Littlejohn*, 795 F.3d at 311.

### 2. Application to the Facts

#### a. As to Whether the Plaintiff's Factual Allegations Before 2008 are Time-Barred

The Supreme Court has explicitly stated that

Title 42 U.S.C. § 2000e–5(e)(1) is a charge filing provision that "specifies with precision" the prerequisites that a plaintiff must satisfy before filing suit. An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits.

*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109, 122 S. Ct. 2061, 2070, 153 L. Ed. 2d 106 (2002). The Court went on to say that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice," *id*. at 114, and specifically held that the Court of Appeals erred by applying the continuing violations doctrine. "[D]iscrete [ ] acts are not actionable if time barred, *even when*

9

*they are related to acts alleged in timely filed charges.* Each discrete [ ] act starts a new clock for filing charges alleging that act." *Id.* at 113 (emphasis added).

Here, the Plaintiff's first EEOC complaint was filed on October 31, 2008. Therefore, any discrete act of discrimination which occurred before January 5, 2008 is not actionable. *See id.* at 114 ("All prior discrete discriminatory acts are untimely filed and no longer actionable."). Accordingly, the Plaintiff will not be able to proceed based on CUNY's failure to promote the Plaintiff in the years preceding 2008; or her demotion in title and stripping of responsibilities in 2007.

### b. As to Whether the Plaintiff Sufficiently Alleged a Failure to Promote in June 2012

CUNY argues that the Plaintiff's claims stemming from Massiah's June 2012 promotion must fail because CUNY failed to consider a male candidate; and therefore no inference of discrimination can be drawn from the occurrence. As stated above, an inference of discrimination can be drawn from "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312. While the Plaintiff does not respond to this argument in any meaningful way, the Court finds that an inference of discrimination can be drawn from the sequence of events as well as the favorable treatment of an employee not in the protected group.

In a letter to the EEOC in which she rebutted CUNY's claims, the Plaintiff said the following about the June 2012 position:

> Effective tune 1, 2012, Mr. Massiah was reclassified from Assistant Director to Deputy Director, which was not a new position. Respondent fails to mention that Mr. Massiah's position actually carries the title of Lieutenant/Assistant Director. I

10

> had previously been told that the position of Deputy Director was no longer part of the Security Office structure. The prior occupant of the Deputy position was Jay tones (a HEO position), and it was vacant since Mr. Jones retired. Another member of the Security force, Sgt. Louis Padron (who is now retired but has indicated he is available and willing to provide testimony) also was told that the Deputy position was no longer available. He subsequently took and passed both the competitive and non-competitive lieutenant's examination and passed both tests, and he was not even given the opportunity to interview for the Lieutenant position. Mr. Massiah has not taken the test for a lieutenant's position, and has, in fact, failed one part of the sergeant's test, according to Mr. Padron. While this information may not be directly germane to my case, it demonstrates a pattern of favoritism and discrimination in how promotions are made at Queens College.

(Def.'s Ex. C at C4).

CUNY states that because there was a male employee who was also not told of the position, Sgt. Louis Padron, the Plaintiff's discrimination claim based on this instance must fail. That is, CUNY argues that since an individual outside of the Plaintiff's protected class who was similarly situated was also not considered for the position, an inference of discrimination cannot be drawn from the situation. The Court disagrees.

The Plaintiff does not allege that Sgt Padron was similarly situated, nor is it clear whether he was similarly situated. Therefore, the Court cannot say that an individual outside of the Plaintiff's protected class, similarly situated, was treated differently. In her EEOC complaint, the Plaintiff lists Massiah as similarly situated. Although he allegedly had fewer qualifications than the Plaintiff, Massiah received a promotion for which she was not even considered. An inference of discrimination can be drawn from a situation such as this one. *See, e.g., Butts v. N.Y.C. Dep't of Hous. Preserv. & Dev.,* No. 00–CV–6307, 2007 WL 259937, at *9 (S.D.N.Y. Jan. 29, 2007) ("An employer's choice of a less qualified employee not from Plaintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination...."), *aff'd,* 307 F. App'x 596 (2d Cir. 2009).

Furthermore, although the continuing doctrine is inapplicable here, the "sequence of events leading to the" failure to consider the Plaintiff for the Deputy Director position allows the Court to draw an inference of discrimination. *Littlejohn*, 795 F.3d at 312. That is, the Plaintiff alleges that Massiah had already effectively replaced the Plaintiff by subsuming her old responsibilities despite the fact that he purportedly was less qualified; the Plaintiff lost many of her responsibilities; then Massiah was again chosen over the Plaintiff to become Deputy Director.

Therefore, the Court finds that the Plaintiff has sufficiently alleged that CUNY discriminated against her on the basis of her gender when it failed to consider her for Deputy Director in June 2012, and that said discrimination was in violation of Title VII. Accordingly, CUNY's motion for a judgment on the pleadings pursuant to Rule 12(c) dismissing the Plaintiff's discrimination claim is denied.

### D. As to the Plaintiff's Title VII Retaliation Claim

CUNY contends that the Plaintiff has not sufficiently alleged a causal connection between the protected activity and any alleged adverse action. While the Plaintiff does not respond to this argument in any meaningful way, the Court finds that the Plaintiff has alleged sufficient facts to survive a motion for a judgment on the pleadings with regard to her December 4, 2014 internal complaint.

#### 1. The Relevant Law

In order to establish a *prima facie* case of retaliation, a plaintiff must establish "(1) [he] engaged in protected activity; (2) the employer was aware of this activity; (3) the employee suffered a materially adverse employment action; and (4) there was a causal connection between the alleged adverse action and the protected activity." *Kelly v. Howard I. Shapiro & Assocs. Consult. Eng'rs, P.C.,* 716 F.3d 10, 14 (2d Cir. 2013) (per curiam) (quoting *Lore v. City of*

*Syracuse,* 670 F.3d 127, 157 (2d Cir. 2012)); *see Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013).

### 2. Application to the Facts

The Plaintiff filed EEOC complaints on November 4, 2008, and September 9, 2012; and filed an internal complaint with CUNY on December 4, 2014.

The Plaintiff does not allege that her employment was materially adversely affected after her first EEOC charge until June 2012, when the Plaintiff alleges that she was not considered for the position of Deputy Director of Public Safety. This occurred almost four years after the Plaintiff filed her initial EEOC complaint, and is too far removed in time for the Court to find a causal connection. *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 274, 121 S. Ct. 1508, 149 L .Ed. 2d 509 (2001) ("Action taken . . . 20 months later suggests, by itself, no causality at all.") (per curiam); *Woodworth v. Shinseki*, 447 F. App'x 255, 258 (2d Cir. 2011) (finding fifteen months and eighteen months to far removed to support an inference of retaliation); *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 447 (2d Cir. 1999) (two year gap between complaint and discharge insufficient to prove causation), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006); *cf. Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) ("The seven-month gap between [plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote." (internal citations omitted)).

While the Plaintiff alleges that CUNY attempted to marginalize her by requiring CUNY security staff to obtain permission from Massiah before transporting the Plaintiff; having the Plaintiff serve subpoenas off-campus; and denying her request to work on a security detail at a concert, these are not materially adverse employment actions. To be "materially adverse,"

13

Plaintiff's working conditions must undergo a change "more disruptive than a mere inconvenience or an alteration in job responsibilities." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000). "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Pimentel v. City of N.Y.,* No. 00 Civ. 326, 2002 WL 977535, at *3 (S.D.N.Y. May 14, 2002) (internal citations and quotation marks omitted).

Similarly, the Plaintiff does not allege any materially adverse employment action after her 2012 EEOC complaint. According to the FAC, the Plaintiff's job was not altered until late 2014. On October 9 and 21, 2014, CUNY allegedly failed to notify the Plaintiff that a potential predator was present on the campus. Nevertheless, this allegation is too remote in temporal proximity.

However, in the Court's opinion, the Plaintiff has alleged sufficient facts to survive 12(b)(6) scrutiny regarding retaliation against her internal complaint filed on December 4, 2014. The law also does not require that the employee file a formal complaint when opposing the discriminatory practices—an informal complaint is sufficient. *See Cruz,* 202 F.3d at 566 ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management . . . and expressing support of co-workers who have filed formal charges.'" (quoting *Sumner v. U.S. Postal Serv.,* 899 F.2d 203, 209 (2d Cir. 1990))); *Ellis v. Century 21 Dep't Stores*, 975 F. Supp. 2d 244, 281 (E.D.N.Y. 2013) ("In order to oppose sexual harassment, [p]laintiff need not have filed a formal complaint as long as she complained of activity that she had a good faith, reasonable belief violated the law."); *Bennett v. Hofstra Univ.,* 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012) (noting that Title VII does not require a formal complaint); *Martin v. State Univ. of N.Y.,* 704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established

that informal complaints to supervisors constitute protected activity under Title VII." (internal citations and quotation marks omitted)).

The Plaintiff alleges that in early December 2014, CUNY transferred the majority of her responsibilities to a male co-worker. A significant loss of material responsibilities can constitute a materially adverse employment action. *See Galabya*, 202 F.3d at 640 ("A materially adverse change might be indicated by a . . . a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . . significantly diminished material responsibilities, or other indices . . . unique to a particular situation." (internal citations and quotation marks omitted)). While it is possible that this occurred in the three days in December before the Plaintiff filed her internal complaint on December 4, 2014, the Court will construe the FAC liberally and interpret early December to mean the first half of the month.

The Court notes that the FAC states that the Plaintiff "complained to the Defendants on several occasions regarding CUNY's failure to promote her in favor of younger male candidates." (FAC ¶ 24). However, as the complaint does not allege when these complaints were made, the Court cannot analyze whether they were sufficiently proximate in time to any materially adverse employment actions.

Accordingly, CUNY's motion for a judgment on the pleadings pursuant to Rule 12(c) dismissing the Plaintiff's retaliation claim is denied, as the Plaintiff has alleged sufficient facts as to her internal December 4, 2014 complaint.

**E. As to the Plaintiff's Title VII Hostile Work Environment Claim**

CUNY asserts that the Plaintiff has not sufficiently plead a claim for hostile work environment, and that even if she has, her claim is untimely. In opposition, the Plaintiff argues that she has sufficiently alleged that she was subjected to a hostile work environment, and that the

claim receives the benefit of the continuing violation doctrine. The Court finds that although the Plaintiff is correct that hostile work environment claims are subject to the continuing violation doctrine, *see Morgan*, 536 U.S. at 115–17, she has failed to allege sufficient facts to support such a claim.

1. **The Relevant Law**

To establish a hostile work environment claim under Title VII, a plaintiff must show that her workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (quotation marks and citations omitted); *Patterson v. Cty. of Oneida,* 375 F.3d 206, 227 (2d Cir. 2004).

Courts must look at the totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should consider: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's "work performance." *Harris,* 510 U.S. at 23.

The Plaintiff must demonstrate that the conduct at issue created an environment that is both objectively and subjectively hostile. *Richardson*, 180 F.3d at 436; *White v. Fuji Photo Film USA, Inc.,* 434 F. Supp. 2d 144, 154–155 (S.D.N.Y. 2006). Therefore, the Plaintiff must allege not only that she found the environment offensive, but that a reasonable person also would have found the environment to be hostile or abusive. *Harris*, 510 U.S. at 21–22.

Even when a plaintiff establishes that she was exposed to an objectively and subjectively hostile work environment, "she will not have a claim . . . unless she can also demonstrate that the hostile work environment was caused by animus towards her as a result of her membership in a

protected class." *Sullivan v. Newburgh Enlarged Sch. Dist. Clarence Cooper*, 281 F. Supp. 2d 689, 704 (S.D.N.Y. 2003); *see also Fordham v. Islip Union Free Sch. Dist.*, 662 F. Supp. 2d 261, 273 (E.D.N.Y. 2009) (stating that incidents comprising a hostile work environment claim must occur under circumstances where the "incidents can reasonably be interpreted as having taken place on the basis of that trait or condition").

However, a plaintiff need not prove all of these elements at the pleading stage. "Specifically, for a 12(b)(6) motion, a 'plaintiff need only plead facts sufficient to support the conclusion that []he was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Buckley v. N.Y.*, 959 F. Supp. 2d 282, 300 (E.D.N.Y. 2013) (Spatt, J.) (quoting *Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007)). However, the Plaintiff must still allege that she was subjected to that harassment or hostility because of her membership in that class.

### 2. Application to the Facts

Reviewing the totality of the Plaintiff's allegations, she states that she was marginalized by having to submit to Massiah's supposed authority; was denied the opportunity to work security detail at a concert; was not informed of the presence of a predator on two occasions; and had to serve subpoenas off-campus.

Even while recognizing that the Court should not set "the bar too high," *Patane,* 508 F.3d at 113, the Plaintiff still fails to plead sufficient facts to allege a viable hostile work environment claim. In the Court's view, none of these allegations rise to the level of "harassment . . . of such quality **or** quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Buckley*, 959 F. Supp. 2d at 300 (internal citations and quotation marks omitted). It does not appear that the Plaintiff was harassed. At best, the Plaintiff's treatment at

work could be considered inconveniences, and the Plaintiff does not connect her treatment to her gender in any way. "While these duties or events may offend Plaintiff, they lack the minimum factual specificity necessary . . . to demonstrate how h[er] work environment was hostile." *Uwakwe v. Bridging Access to Care, Inc.*, No. 15CV06703DLIRER, 2017 WL 1048070, at *9 (E.D.N.Y. Mar. 16, 2017).

"Title VII does not establish a 'general civility code' for the American workplace," *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 210 (2d Cir. 2010); (quoting *Petrosino v. Bell Atl.,* 385 F.3d 210, 223 (2d Cir. 2004)), and "not every unpleasant matter short of discharge or demotion constitutes an adverse action under Title VII." *Gentile v. Potter*, 509 F. Supp. 2d 221, 239 (E.D.N.Y. 2007) (citing *Delgado v. Triborough Bridge and Tunnel Auth.,* 485 F. Supp. 2d 453, 461 (S.D.N.Y. 2007)); *see also Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) ("[N]ormal[] petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.") (internal citations omitted). "The fact that [the] Plaintiff may be a member of a minority group and something happens to [her] that [s]he does not like is not nearly sufficient to constitute an employment discrimination claim." *Buckley v. N.Y.*, No. 11-cv-5512 (ADS) (AKT), U.S. Dist. LEXIS 190837, at *37 (E.D.N.Y. Sept. 29, 2012).

Therefore, the Plaintiff has not sufficiently plead a cause of action for hostile work environment pursuant to Title VII. In this regard, the Court need not address CUNY's other arguments. Accordingly, CUNY's motion for a judgment on the pleadings pursuant to Rule 12(c) dismissing the Plaintiff's hostile work environment claim is granted.

## III. CONCLUSION

Therefore, for the reasons stated above, CUNY's motion for a judgment on the pleadings pursuant to Rule 12(c), dismissing the Plaintiff's complaint, is granted in part, and denied in part. It is granted to the extent that the Plaintiff's hostile work environment claim is dismissed; the Plaintiff may not rely on any events before 2008 in her Title VII discrimination claim; and the Plaintiff may only proceed on her Title VII retaliation claim based on CUNY's alleged acts after she filed an internal complaint in December 2014. It is denied to the extent that the Plaintiff's Title VII discrimination and retaliation claims nevertheless survive 12(b)(6) scrutiny.

The case is respectfully referred to Magistrate Judge Arlene R. Lindsay for the remainder of discovery.

It is **SO ORDERED:**

Dated: Central Islip, New York

July 10, 2017

_____/s/ Arthur D. Spatt_____

ARTHUR D. SPATT

United States District Judge